**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | ) |
| | ) Chapter 11 |
| PLASTIQ INC., *et al.*,[1] | ) |
| | ) Case No. 23-10671 (BLS) |
| Debtors. | ) |
| | ) (Jointly Administered) |
| | ) |
| | ) **Ref. Docket No. 23** |

**ORDER AUTHORIZING (I) THE SALE OF THE DEBTORS' ASSETS FREE
AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND OTHER
INTERESTS; (II) THE DEBTORS TO ENTER INTO AND PERFORM THEIR
OBLIGATIONS UNDER THE ASSET PURCHASE AGREEMENT AND RELATED
DOCUMENTS; (III) THE DEBTORS TO ASSUME AND ASSIGN CERTAIN
CONTRACTS AND UNEXPIRED LEASES; (IV) WAIVER OF THE STAY PERIODS
UNDER BANKRUPTCY RULES 6004(h) AND 6006(d); AND (V) GRANTING
<u>RELATED RELIEF</u>**

Upon the motion (the "**Motion**")[2] of the above-captioned debtors and debtors in possession

(each, a "**Debtor**" and collectively, the "**Debtors**"), for the entry of an order (i) approving bidding

procedures (the "**Bidding Procedures**"), substantially in the form attached as <u>Annex 1</u> to the

Bidding Procedures Order (as defined below), to govern the marketing and sale of all or

substantially all of the Debtors' assets (the "**Assets**"), and approving bid protections in connection

therewith; (ii) authorizing the Debtors to schedule an auction to sell the Assets (the "**Auction**")

and scheduling the hearing to approve a sale of the Assets; (iii) approving the form and manner of

notice of the proposed sale transactions, the Bidding Procedures, the Auction, the Sale Hearing,

and related dates and deadlines; (iv) authorizing procedures governing the assumption and

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Plastiq Inc. (6125), PLV Inc. d/b/a/ PLV TX Branch Inc. (5084), and Nearside Business Corp. (N/A). The corporate headquarters and the mailing address for the Debtors is 1475 Folsom Street, Suite 400, San Francisco, California 94103.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Purchase Agreement (as defined below), unless otherwise indicated herein.

assignment of certain executory contracts and unexpired leases (the "**Assumed Contracts**") to the prevailing bidder(s) acquiring the Debtors' Assets (a "**Successful Bidder**"); and (v) granting related relief (this "**Order**"); and the Court having entered on  June, 2023, that certain *Order (I) Approving Bidding Procedures in Connection With the Sale of the Debtors' Assets and Related Bid Protections; (II) Approving Form and Manner of Notice; (III) Scheduling Auction and Sale Hearing; (IV) Authorizing Procedures Governing Assumption and Assignment of Certain Contracts and Unexpired Leases; and (V) Granting Related Relief* [Docket No. 127] (the "**Bidding Procedures Order**"); and the Official Committee of Unsecured Creditors having filed the *Limited Objection of Official Committee of Unsecured Creditors to Approval of Sale of Debtors' Assets and Distribution of Sale Proceeds Under Stalking Horse Bid* [Docket No. 186] (the "**Committee Objection**"); and the Debtors' having filed the *Notice of Cancellation of Auction* [Docket No. 189] in accordance with the Bidding Procedures Order; and Plastiq, Powered by Priority, LLC (the "**Purchaser**") having submitted the highest and best offer for the Debtors' Assets that are identified in the Purchase Agreement (as defined below); and the Court having conducted a hearing on the Motion commencing on July 27, 2023 (the "**Sale Hearing**") at which time all interested parties were offered an opportunity to be heard with respect to the Motion; and the Court having reviewed and considered the Motion, the Purchase Agreement (as defined below), the Bidding Procedures Order, and the record of the hearing before the Court on June 21, 2023 (the "**Bidding Procedures Hearing**") at which the Bidding Procedures Order was approved and any objections to the Bidding Procedures were withdrawn or overruled; and the appearance of all interested parties and all responses and objections to the Motion having been duly noted in the record of the Sale Hearing; and upon the record of the Sale Hearing, and having heard statements of counsel and the evidence presented in support of the relief requested in the Motion at the Sale Hearing; and upon

all of the proceedings held before the Court; and all objections and responses to the relief requested in the Motion having been heard and overruled, withdrawn, or resolved on the terms set forth in this Order; timely, proper and sufficient  notice of the Motion, the Sale Hearing, the Purchase Agreement (as defined below), the purchase and sale of the Purchased Assets (as defined in the Purchase Agreement), including without limitation the assumption and assignment of the Assumed Contracts, pursuant to the terms of the Purchase Agreement (as defined below) (the "**Transaction**"), the Bidding Procedures Order, the Sale Notice, the Cure Notice, and the relief requested in this Order having been provided; and it appearing that the relief requested in the Motion is in the best interests of the Debtors, their estates, their stakeholders, and all other parties in interest; and it appearing that the Court has jurisdiction over this matter; and it further appearing that the legal and factual bases set forth in the Motion and at the Sale Hearing establish just cause for the relief granted herein; and after due deliberation thereon, it is hereby:

**FOUND AND CONCLUDED THAT**:[3]

### Findings of Fact, Conclusions of Law, Jurisdiction, Venue, and Final Order

A.     The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to the Chapter 11 Cases pursuant to Bankruptcy Rule 9014.

B.     To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent, any of the following conclusions of law constitute findings of fact, they are adopted as such.

---

[3]     All findings of fact and conclusions of law announced by the Bankruptcy Court at the Sale Hearing in relation to the Motion are hereby incorporated to the extent not inconsistent herewith.

C.      This Court has jurisdiction to consider the Motion under 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated as of February 29, 2012.  This is a core proceeding under 28 U.S.C. § 157(b) and the Court may enter a final order consistent with Article III of the United States Constitution. Venue of these cases and the Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

D.      This Order constitutes a final order within the meaning of 28 U.S.C. § 158(a). Notwithstanding Bankruptcy Rules 6004(h), 6006(d), and 7062, and to the extent necessary under Bankruptcy Rule 9014 and Rule 54(b) of the Federal Rules of Civil Procedure, as made applicable by Bankruptcy Rule 7054, this Court expressly finds that there is no just reason for delay in the implementation of this Order and expressly directs entry of this Order as set forth herein which shall not be subject to any stay.

## Notice of the Transaction, the Purchase Agreement, Sale Hearing, Bid Deadline, and Cure Amounts

E.      As evidenced by the affidavits or declarations of service previously filed with this Court, [Docket Nos. 56, 147 & 188], proper, timely, adequate, and sufficient notice of the Motion, the Bid Deadline (as defined below), the Sale Hearing, the Purchase Agreement (as defined below), the Transaction, and the proposed form of this Order have been provided in accordance with sections 102(1), 363 and 365 of the Bankruptcy Code, and Bankruptcy Rules 2002, 6004, 6006, and 9014.  The Debtors have complied with all obligations to provide notice of the Motion, the Bid Deadline, the Sale Hearing, the Purchase Agreement (as defined below), the Transaction, and the proposed form of this Order as required by the Bidding Procedures Order.  The aforementioned notices are good, sufficient, and appropriate under the circumstances, and no other or further notice of the Motion, the Bid Deadline, the Sale Hearing, the Purchase Agreement (as defined below), or the Transaction is required for the entry of this Order.

F.      A reasonable opportunity to object or to be heard regarding the relief requested in the Motion was afforded to all interested persons and entities.

G.      In accordance with the Bidding Procedures Order, and as evidenced by the affidavits or declarations of service previously filed with this Court [Docket Nos. 175 & 184], the Debtors filed and have served the *Notice of Possible Assumption and Assignment of Certain Executory Contracts and Unexpired Leases* [Docket No. 148] on June 27, 2023 (the "**Cure Notice**") regarding the potential assumption and assignment of the Assumed Contracts and of the amount necessary to cure any defaults pursuant to section 365(b) of the Bankruptcy Code (all such amounts in connection with any Assumed Contract, the "**Cure Amounts**") upon the non-Debtor counterparties to the Assumed Contracts.   The service of the Cure Notice was timely, good, sufficient, and appropriate under the circumstances and consistent with applicable sections and rules of the Bankruptcy Code and Bankruptcy Rules and no further notice need be given in respect of assumption and assignment of the Assumed Contracts, including with respect to adequate assurance of future performance or establishing a Cure Amount for the respective Assumed Contracts.  All non-Debtor counterparties to each Assumed Contract set forth in the Cure Notice have had an adequate opportunity to object to assumption and assignment of the applicable Assumed Contract and the Cure Amount set forth in the Cure Notice, and including objections related to the adequate assurance of future performance and objections based on whether applicable law excuses the non-Debtor counterparty from accepting performance by, or rendering performance to, the Purchaser for purposes of section 365(c)(1) of the Bankruptcy Code.  The deadline to file an objection to the Cure Amounts or to the assumption and assignment to the Purchaser of any Assumed Contract (a "**Contract Objection**") has expired, and to the extent, any such entity timely filed a Contract Objection, all such Contract Objections have been resolved,

withdrawn or overruled.  To the extent that any such party did not timely file a Contract Objection by the Contract Objection deadline, such party shall be deemed to have consented to (i) the assumption and assignment of the Assumed Contract, and (ii) the proposed Cure Amount set forth on the Contract Notice.

### The Stalking Horse Bid

H.     On May 23, 2023, the Purchaser and the Debtors entered into that certain Equity and Asset Purchase Agreement that is attached to this Order as <u>Exhibit A</u> (as amended by that certain Amendment No. 1 to Equity and Asset Purchase Agreement [Docket No. 219] (as may amended or modified, "**Amendment No. 1**"), and including all schedules, exhibits, supplements, and related agreements and documents, the "**Purchase Agreement**"), which provided for, among other things, (a) a cash purchase price of $27.5 million; (b) the consideration described and as set forth in the Earnout Agreement (as defined in and attached to Amendment No. 1); and (c) the assumption of Assumed Liabilities (collectively, the "**Stalking Horse Bid**") in exchange for the Purchased Assets.

I.     As provided in the Bid Procedures, the Stalking Horse Bid constitutes a Qualified Bid (as defined in the Bidding Procedures).

### Highest or Otherwise Best Offer

J.     As demonstrated by the evidence proffered or adduced at the Sale Hearing and the representations of counsel made on the record at the Sale Hearing, the Debtors have complied in all respects with the Bidding Procedures Order.  The sale was duly noticed and conducted in a non-collusive, fair, and good faith manner and the process set forth in the Bidding Procedures Order afforded a full, fair, and reasonable opportunity for any person or entity to make a higher or otherwise better offer to purchase the Assets and assume the Assumed Liabilities.  The bid deadline

was July 20, 2023 at 4:00 p.m. (Prevailing Eastern Time) (the "**Bid Deadline**").  No Qualified Bid

other than the Stalking Horse Bid was received prior to the Bid Deadline.

K.     The Purchased Assets were adequately marketed by the Debtors and their advisors,

and the consideration provided by the Purchaser under the Purchase Agreement constitutes the

highest and best offer and provides fair and reasonable consideration to the Debtors for the

Purchased Assets and the assumption of the Assumed Liabilities.  The Stalking Horse Bid presents

the best opportunity to maximize and realize the value of the Purchased Assets for the benefit of

the Debtors, their estates, and their creditors.  The Debtors' determination that the consideration

provided by the Purchaser under the Purchase Agreement constitutes the highest and best offer for

the Purchased Assets is a valid and sound exercise of the Debtors' business judgment.

L.     Approval of the Motion and the Purchase Agreement, and the consummation of the

Transaction contemplated thereby, are in the best interests of the Debtors, their creditors, their

estates, and other parties in interest.  The Debtors have demonstrated good, sufficient, and sound

business reasons and justifications for entering into the Transaction and the performance of their

obligations under the Purchase Agreement.

M.     Entry of this Order approving the Purchase Agreement, and all of the provisions

thereof, in form and substance consistent with and as required by the terms of the Purchase

Agreement, is a condition precedent to the Purchaser's consummation of the Transaction.

N.     The Purchase Agreement was not entered into, and neither the Debtors nor the

Purchaser has entered into the Purchase Agreement, or proposes to consummate the Transaction,

for the purpose of hindering, delaying, or defrauding the Debtors' present or future creditors.

Neither the Debtors nor the Purchaser is entering into the Purchase Agreement, or proposing to

consummate the Transaction, fraudulently, for the purpose of statutory or common law fraudulent

conveyance and fraudulent transfer claims whether under the Bankruptcy Code or under the laws of the United States, any state, territory, possession thereof or the District of Columbia or any other applicable jurisdiction with laws substantially similar to the foregoing.

O.    The terms and conditions set forth in the Purchase Agreement, including the form and amount of total consideration to be realized by the Debtors pursuant to the Purchase Agreement:  (i) are in the best interests of the Debtors' creditors and estates; and (ii) constitute fair value, full and adequate consideration, reasonably equivalent value, and reasonable market value for the Purchased Assets.

P.    The Purchaser is the Successful Bidder for the Purchased Assets in accordance with the Bidding Procedures Order.  The Purchaser has complied in all respects with the Bidding Procedures Order and any other applicable order of this Court in negotiating and entering into the Purchase Agreement, and the sale and the Purchase Agreement likewise comply with the Bidding Procedures Order and any other applicable order of this Court.

**<u>Good Faith of the Debtors and the Purchaser</u>**

Q.    The sale process conducted by the Debtors, including, without limitation, the Bidding Procedures set forth in the Bidding Procedures Order and the Purchaser's participation in that process, was at arm's length, non-collusive, and in good faith.

R.    The Purchase Agreement and the Transaction contemplated thereunder were proposed, negotiated, and entered into by and among the Debtors and the Purchaser without collusion, in good faith, and at arm's length.

S.    Neither the Purchaser nor any of its Affiliates, present or contemplated members, officers, directors or shareholders is an "insider" of the Debtors, as the term "insider" is defined in section 101(31) of the Bankruptcy Code.  The Purchaser is entering into the Transaction in good

faith and is a good faith buyer within the meaning of section 363(m) of the Bankruptcy Code, and is therefore entitled to the full protection of that provision, and otherwise has proceeded in good faith in all respects in connection with the Chapter 11 Cases and the Transaction.  Neither the Debtors, the Purchaser, nor any Affiliate of either have engaged in any action or inaction that would cause or permit the Purchase Agreement or the Transaction to be avoided or impose any costs or damages under section 363(n) of the Bankruptcy Code.

T.      The Purchaser is a "good faith purchaser" and is acting in good faith within the meaning of Section 363(m) of the Bankruptcy Code and, as such, is entitled to all the protections afforded thereby. The Purchaser has proceeded in good faith in all respects in that, among other things: (i) the Purchaser recognized that the Debtors were free to deal with any other party interested in acquiring the Purchased Assets; (ii) the Purchaser complied with the provisions of the Bidding Procedures Order; (iii) the Purchaser's bid was subjected to an open marketing process and competitive Bidding Procedures as set forth in the Bidding Procedures Order; and (iv) all payments to be made by the Purchaser and all other material agreements or arrangements entered into by the Purchaser and the Debtors in connection with the Transaction have been disclosed and are appropriate. The sale price in respect of the Purchased Assets was not controlled by any agreement among potential bidders and neither the Debtors nor the Purchaser has engaged in collusion or any conduct that would cause or permit the Purchase Agreement to be avoided or costs and damages to be imposed under Section 363(n) of the Bankruptcy Code.

## The Requirements of Section 363 Are Satisfied

U.      The Debtors have demonstrated a sufficient basis and compelling circumstances requiring the Debtors to (i) enter into the Purchase Agreement; (ii) sell the Purchased Assets; and (iii) assume and assign the Assumed Contracts, and such actions are appropriate exercises of the

Debtors' business judgment and in the best interests of the Debtors, their estates, and their creditors. Such business reasons include, without limitation, the fact that: (i) the Purchase Agreement constitutes the highest and best offer for the Purchased Assets; (ii) the Purchase Agreement presents the best opportunity to maximize and realize the value of the Purchased Assets for the benefit of the Debtors, their estates and their creditors; and (iii) unless the sale is concluded expeditiously, the recoveries to the Debtors' estates and constituencies are likely to be adversely affected and there is a significant risk that a substantial amount of liabilities that will be assumed by the Purchaser under the Purchase Agreement will not be satisfied.

V.      The Purchase Agreement and any related documents are valid and binding contracts between the Debtors and the Purchaser and shall be enforceable pursuant to their terms.

W.      The Purchased Assets constitute property of the Debtors' estates within the meaning of section 541(a) of the Bankruptcy Code and title thereto is presently vested in the Debtors' estates.

X.      The sale of all Purchased Assets to the Purchaser under the terms of the Purchase Agreement satisfies the applicable provisions of section 363(f) of the Bankruptcy Code, and except as expressly provided in the Purchase Agreement:(i) the transfer of the Purchased Assets to the Purchaser and (ii) the assumption or assignment to the Purchaser or an Affiliate of the Purchaser of the Assumed Contracts and the Assumed Liabilities, in each case, will be free and clear of any and all Liens, Claims, Excluded Liabilities (each as defined in the Purchase Agreement) and other interests of any kind or nature whatsoever, whether arising prior to or subsequent to the commencement of these Chapter 11 Cases, whether known or unknown, and whether imposed by agreement, understanding, law, equity or otherwise arising under or out of, in connection with, or in any way related to the Debtors, the Purchased Assets, the operation of the Debtors' businesses

on or prior to the Closing pursuant to the Purchase Agreement, or the transfer of the Purchased

Assets to the Purchaser, because, in each case, on or more of the standards set forth in Sections

363(f)(1)-(5) of the Bankruptcy Code have been satisfied,[4] (provided, however, that nothing herein

shall be deemed or construed as a ruling or determination that the Assumed Liabilities encumber

the Purchased Assets) and will not subject the Purchaser, any Affiliates of Purchaser or any their

respective officers, directors, representatives, controlling persons, members, employees, agents,

representatives, shareholders, partners, successors and assigns or any of their respective assets

(including the Purchased Assets), to any liability for any Liens or Claims whatsoever (including,

without limitation, under any theory of equitable law, antitrust, setoff (except with respect to

setoffs that were effected prior to the Petition Date), or successor or transferee liability.

Y.    The Purchaser would not have entered into the Purchase Agreement and would not

consummate the Transaction, thus adversely affecting the Debtors, their estates, their creditors,

their employees, and other parties in interest, if the sale of the Purchased Assets was not free and

clear of any and all Liens and Claims (other than Permitted Liens), or if the Purchaser would be,

or in the future could be, liable for any Liens or Claims, including, without limitation and as

applicable, certain liabilities that expressly are not assumed by the Purchaser as set forth in the

Purchase Agreement or in this Order.   A sale of the Purchased Assets other than one free and clear

of all such Liens and Claims would adversely impact the Debtors and their estates and creditors,

and would yield substantially less value for the Debtors' estates, with less certainty than the

Transaction.

---

[4]    The DIP Secured Parties and the Prepetition Secured Parties (each as defined in the Final DIP Order) have consented to the Sale of the Purchased Assets free and clear of their Liens and Claims on the terms set forth herein (including paragraph 5 of this Order).

Z.    The transfer of the Purchased Assets to the Purchaser under the Purchase Agreement is a legal, valid, and effective transfer of all of the legal, equitable, and beneficial right, title, and interest in and to the Purchased Assets free and clear of any and all Liens and Claims (other than Permitted Liens and Assumed Liabilities).

AA.    The Purchaser is not deemed to be a successor to the Debtors or their estates by reason of any theory of law or equity, and the Purchaser shall not assume or in any way be responsible for any liability or obligation of any of the Debtors or their estates by reason thereof. The Purchaser is not deemed to be a continuation or substantial continuation of the Debtors or their estates, and there is no continuity between the Purchaser and the Debtors.  The Purchaser does not have a common identity of incorporators, directors, officers, or equity holders with the Debtors.

BB.    There is no legal or equitable reason to delay the Transaction.  The Transaction must be approved and consummated promptly to preserve and maximize the value of the Debtors' Assets.

CC.    The Debtors have demonstrated both (i) good, sufficient, and sound business purposes and justifications, and (ii) compelling circumstances for the Transaction pursuant to section 363(b) of the Bankruptcy Code prior to, and outside of, a plan of reorganization in that, among other things, absent the immediate consummation of the Transaction, the value of the Purchased Assets will be harmed.  To maximize the value of the Purchased Assets, it is essential that the Transaction occur within the timeframe set forth in the Purchase Agreement.  Time is of the essence in consummating the Transaction.  Accordingly, there is good cause to waive the stay contemplated by Bankruptcy Rules 6004(h) and 6006(d).  In addition, the Court finds that there are no unresolved objections that might form the basis for an appealable issue.

DD.    The sale and assignment of the Purchased Assets outside of a Chapter 11 plan pursuant to the Purchase Agreement neither impermissibly restructures the rights of the Debtors' creditors nor impermissibly dictates the terms of a liquidating plan for the Debtors.  Neither the Purchase Agreement nor the Transaction contemplated thereby constitutes a *sub rosa* chapter 11 plan.

### Assumption and Assignment of the Assumed Contracts

EE.    The assumption and assignment of the Assumed Contracts (as such Assumed Contracts may be amended, supplemented, or otherwise modified as provided in the Purchase Agreement) that are designated for assumption and assignment pursuant to the terms of the Purchase Agreement is integral to the Purchase Agreement, is in the best interests of the Debtors and their estates, creditors, and other parties in interest, and represents the reasonable exercise of sound and prudent business judgment by the Debtors.

FF.    The Debtors have met all requirements of section 365 of the Bankruptcy Code for each of the Assumed Contracts.  The Debtors will have (i) cured or provided adequate assurance of cure of any default existing prior to the consummation of the Transaction contemplated by the Purchase Agreement (the "**Closing**") under all of the Assumed Contracts, within the meaning of section 365(b)(1)(A) of the Bankruptcy Code and (ii) provided compensation or adequate assurance of compensation to any counterparty to an Assumed Contract for actual pecuniary loss to such entity resulting from a default prior to the Closing under any of the Assumed Contracts, within the meaning of section 365(b)(1)(B) of the Bankruptcy Code.  The assignment of each of the Assumed Contracts is free and clear of any and all Liens and Claims, except as expressly permitted in the Purchase Agreement.

GG.    The Purchaser has demonstrated adequate assurance of future performance under the relevant Assumed Contracts within the meaning of sections 365(b)(1)(C) and 365(f)(2)(B) of the Bankruptcy Code.  Pursuant to section 365(f) of the Bankruptcy Code, the Assumed Contracts to be assumed and assigned under the Purchase Agreement shall be assigned and transferred to the Purchaser (in accordance with the timing specified in the Purchase Agreement), and remain in full force and effect for the benefit of the Purchaser, notwithstanding any provision in the contracts or other prohibitions or restrictions, including applicable non-bankruptcy law, prohibiting or conditioning their assignment or transfer.

HH.    No defaults exist in the Debtors' performance under the Assumed Contracts as of the date of this Order other than the failure to pay amounts equal to the Cure Amounts or defaults that are not required to be cured as contemplated in section 365(b)(1)(A) of the Bankruptcy Code.

**IT IS HEREBY ORDERED THAT:**

**<u>General Provisions</u>**

1.    The Motion is granted and approved as set forth herein.  The Debtors are authorized and directed to (a) sell the Purchased Assets to the Purchaser and (b) transfer, assign and convey the Purchased Assets, including the Assumed Contracts to the Purchaser, in each case in accordance with the Purchase Agreement.

2.    All objections to the Motion or the relief requested therein that have not been withdrawn, waived, or settled as announced to the Court at the Sale Hearing, or by stipulation filed with the Court, or as resolved in this Order, and all reservations of rights included therein, are hereby overruled on the merits with prejudice.  All non-Debtor counterparties to the Assumed Contracts that failed to timely object thereto are deemed to consent to the relief sought therein. All holders of Liens and Claims who did not object, or withdrew their objections to the Transaction, are deemed to have consented to the Transaction pursuant to section 363(f)(2) of the

Bankruptcy Code, and all holders of Liens and Claims are adequately protected – thus satisfying section 363(e) of the Bankruptcy Code.

<u>**Approval of the Purchase Agreement**</u>

3.      The Purchase Agreement, all of the terms and conditions thereof, and the Transaction contemplated therein are approved in all respects.  The failure specifically to include any particular provision of the Purchase Agreement in this Order shall not diminish or impair the effectiveness of such provision, it being the intent that the Purchase Agreement be authorized and approved in its entirety.  The transfer of the Purchased Assets by the Debtors to the Purchaser shall be a legal, valid, and effective transfer of the Purchased Assets.  The consummation of the Transaction is hereby approved and authorized under section 363(b) and (f) of the Bankruptcy Code.  The automatic stay pursuant to section 362 of the Bankruptcy Code, to the extent applicable, is hereby modified to allow the Purchaser to enforce its rights pursuant to the Purchase Agreement and this Order.

4.      The Debtors are authorized to (a) take any and all actions necessary or appropriate to perform, consummate, implement, and close the Transaction, including the sale to the Purchaser of the Purchased Assets, in accordance with the terms and conditions set forth in the Purchase Agreement and this Order, including, without limitation, executing, acknowledging, and delivering such deeds, assignments, conveyances, and other assurance, documents, and instruments of transfer and taking any action for purposes of assigning, transferring, granting, conveying, and confirming to the Purchaser, or reducing to possession, any or all of the Purchased Assets, and entering into any other agreements related to implementing the Transaction, and (b) to assume and assign all Assumed Contracts to the Purchaser in accordance with the timing set forth in the Purchase Agreement.

5.      Notwithstanding anything to the contrary in any other order of this court, in accordance with the terms of that certain *Final Order Pursuant To 11 U.S.C. §§ 105, 361, 362, 363, 364, 503 And 507 (I) Authorizing The Debtors To Obtain Senior Secured Superpriority Postpetition Financing; (II) Granting (A) Liens And Superpriority Administrative Expense Claims And (B) Adequate Protection To Certain Prepetition Lenders; (III) Authorizing Use Of Cash Collateral; (IV) Scheduling A Final Hearing; And (V) Granting Related Relief* [D.I. 138] (the "**Final DIP Order**"), and in consideration for the DIP Secured Parties and the Prepetition Secured Parties consent to the transactions contemplated by the Purchase Agreement, on the Closing Date, (i) the cash consideration payable by the Purchaser under the Purchase Agreement shall be paid to the DIP Agent and Prepetition Agent (each as defined in the Final DIP Order), (ii) the Debtor's right to receive the deferred purchase price under the Purchase Agreement shall be assigned to the Prepetition Agent, and (iii) the amounts allocable to the Prepetition Agent from the Amex Deposit Refund pursuant to paragraph 5.29(c) of the Final DIP Order shall be remitted to the Prepetition Agent, and (iv) the amounts allocable to the Prepetition Agent from the Colonnade Disbursement pursuant to paragraph 5.29(d) of the Final DIP Order, if any, shall be remitted to the Prepetition Agent.

## Sale and Transfer Free and Clear of all Liens and Claims

6.      Except as otherwise expressly provided in the Purchase Agreement solely with respect to Assumed Liabilities and Permitted Liens, if any, the Purchased Assets shall be sold to the Purchaser free and clear of any and all Liens and Claims, liabilities, interests, rights, and encumbrances of any kind whatsoever, including, without limitation, any escheat claims or obligations of the Debtors arising prior to the Closing, rights of setoff (except with respect to setoffs that were validly effected prior to the Petition Date), and all other matters of any kind and

nature, whether known or unknown, contingent or non-contingent, liquidated or unliquidated, matured or unmatured, whether arising prior to or subsequent to the commencement of the Chapter 11 Cases (but, for the avoidance of doubt, in each case arising from the ownership or the operation of the Purchased Assets prior to the date of the Closing (the "**Closing Date**")), and any consensual or nonconsensual lien, statutory lien, real or personal property lien, mechanics' lien, materialmans' lien, warehousemans' lien, tax lien, and any and all "liens" as that term is defined and used in the Bankruptcy Code, including section 101(37) thereof. All Liens and Claims, and interests from which the Purchased Assets are sold free and clear shall attach to the proceeds of the sale of the Purchased Assets to be received by the Debtors in the same order and priority that such Liens and Claims and interests had prior to the Closing.

7.    All of the Debtors' right, title, and interest in and to, and possession of, the Purchased Assets shall be immediately vested in the Purchaser as set forth in the Purchase Agreement, pursuant to sections 105(a), 363(b), 363(f), and 365 of the Bankruptcy Code free and clear of any and all Liens and Claims except for Assumed Liabilities and Permitted Liens. Such transfer shall constitute a legal, valid, binding, and effective transfer of such Purchased Assets to Purchaser.

8.    This Order: (i) shall be effective as a determination that as of the Closing, (a) no Liens or Claims (other than Assumed Liabilities and Permitted Liens) will be capable of being asserted against the Purchaser, any Affiliates of Purchaser or any their respective officers, directors, representatives, controlling persons, members, employees, agents, representatives, shareholders, partners, successors and assigns or any of their respective assets (including the Purchased Assets), (b) the Purchased Assets shall have been transferred to the Purchaser free and clear of any and all Liens and Claims, except for Assumed Liabilities and Permitted Liens, if any,

and as provided for in the Purchase Agreement, and (c) the conveyances described herein have been effected; and (ii) is and shall be binding upon and govern the acts of all entities, including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, registrars of patents, trademarks, or other intellectual property, administrative agencies, governmental departments, secretaries of state, federal and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register, or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title; and each of the foregoing persons and entities is hereby authorized and directed to accept for filing any and all of the documents and instruments necessary or appropriate to consummate the transactions contemplated by the Purchase Agreement.

9.      Except as otherwise expressly provided in the Purchase Agreement and with respect to the Assumed Liabilities and Permitted Liens, if any, all persons and entities (and their respective successors and assigns), including, without limitation, all debt security holders, equity security holders, Affiliates, governmental, tax and regulatory authorities, lenders, customers, vendors, employees, trade creditors, litigation claimants, and other creditors holding Liens or Claims arising under or out of, in connection with, or in any way relating to, the Debtors, the Purchased Assets, the ownership, sale, or operation of the Purchased Assets prior to Closing or the transfer of the Purchased Assets to the Purchaser are hereby forever barred and estopped from asserting such Liens and Claims against the Purchaser, any Affiliates of Purchaser or any their respective officers, directors, representatives, controlling persons, members, employees, agents, representatives, shareholders, partners, successors or assigns or any of their respective assets (including the Purchased Assets).

10.      If any person or entity that has filed financing statements, mortgages, *lis pendens* or other documents or agreements evidencing Liens or Claims against or in the Purchased Assets shall not have delivered to the Debtors prior to the Closing of the Transaction, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of all Encumbrances that the person or entity has with respect to the Purchased Assets or otherwise, then only with regard to the Purchased Assets that are purchased by the Purchaser pursuant to the Purchase Agreement and this Order: (i) the Debtors are hereby authorized and directed to execute and file such statements, instruments, releases, and other documents on behalf of the person or entity with respect to the Purchased Assets; (ii) the Purchaser is hereby authorized to file, register, or otherwise record a certified copy of this Order, which, once filed, registered, or otherwise recorded, shall constitute conclusive evidence of the release of all Liens and Claims against the Purchaser and the  Purchased Assets; and (iii) the Purchaser may seek in this Court or any other court to compel appropriate parties to execute termination statements, instruments of satisfaction, and releases of all Liens and Claims with respect to the Purchased Assets other than Assumed Liabilities and Permitted Liens, if any.  This Order is deemed to be in recordable form sufficient to be placed in the filing or recording system of each and every federal, state, or local government agency, department, or office.  Notwithstanding the foregoing, the provisions of this Order authorizing the sale and assignment of the Purchased Assets free and clear of any and all Liens and Claims shall be self-executing, and neither the Debtors nor the Purchaser shall be required to execute or file releases, termination statements, assignments, consents, or other instruments to effectuate, consummate, and implement the provisions of this Order.

11.      To the maximum extent permitted by applicable law, the Purchaser shall be authorized, as of the Closing Date, to operate under any license, permit, registration, and

governmental authorization or approval (collectively, the "**Licenses**") of the Debtors with respect to the Purchased Assets, and all Licenses are deemed to have been, and hereby are directed to be, transferred to the Purchaser pursuant to the Purchase Agreement.  To the extent any Licenses cannot be transferred to the Purchaser in accordance with the previous sentence, such Licenses: (i) shall be in effect while the Purchaser, with assistance from the Debtors, works promptly and diligently to apply for and secure all necessary government approvals for the transfer or issuance of new Licenses to the Purchaser; and (ii) shall terminate on a license-by-license basis following issuance of a new License to the Purchaser.

12.     Nothing in this Order or the Purchase Agreement releases, nullifies, precludes or enjoins the enforcement of any police or regulatory liability to a governmental unit that any entity would be subject to as owner or operator of property sold or transferred pursuant to this Order after the occurrence of the Closing Date (with respect to such property), *provided, however*, that the foregoing shall not limit, diminish or otherwise alter the Debtors' or the Purchaser's defenses, claims, causes of action, or other rights under applicable non-bankruptcy law with respect to any liability that may exist to a governmental unit at such owned or operated property.  Nothing in this Order or the Purchase Agreement authorizes the transfer or assignment of any governmental (i) license, (ii) permit, (ii) registration, (iv) authorization, or (v) approval, or the discontinuation of any obligation thereunder, without compliance with all applicable legal requirements and approvals under police or regulatory law.  To the extent provided by section 525 of the Bankruptcy Code, a governmental unit may not deny, revoke, suspend, or refuse to renew any permit, license, or similar grant to a person that is or has been a bankrupt or a debtor under the Bankruptcy Code, or another person with whom such bankrupt or debtor has been associated, solely because such bankrupt or debtor is or has been a bankrupt or debtor under the Bankruptcy Code, has been

insolvent before the commencement of the case under the Bankruptcy Code, or during the case but before the debtor is granted or denied a discharge, or has not paid a debt that is dischargeable in the case under the Bankruptcy Code or that was discharged under the Bankruptcy Code.  Nothing in this Order divests any tribunal of any jurisdiction it may have under police or regulatory law to interpret this Order or to adjudicate any defense asserted under this Order, subject to the Debtors' and the Purchaser's rights to assert in that forum or before this Court that any such laws are not in fact police or regulatory law or that the matter should be heard by the Bankruptcy Court.

13.    Unless otherwise provided herein or the Purchase Agreement, all persons and entities that are in possession of some or all of the Purchased Assets as of the Closing Date are directed to surrender possession of such Purchased Assets to the Purchaser on the Closing Date. All persons or entities are prohibited from taking any action to adversely affect or interfere with the ability of the Debtors to transfer the Purchased Assets to the Purchase in accordance with the Purchase Agreement.

## No Successor or Transferee Liability

14.    Neither the Purchaser, nor any Affiliate, successor, or assignee of the Purchaser, shall be deemed, as a result of any action taken in connection with the Purchase Agreement, the consummation of the Transaction contemplated by the Purchase Agreement, or the transfer or operation of the Purchased Assets, including the Assumed Contracts, to: (i) be a legal successor, or otherwise be deemed a successor to the Debtors; (ii) have, *de facto* or otherwise, merged with or into the Debtors; (iii) be an alter ego or a mere continuation or substantial continuation of the Debtors including, without limitation, within the meaning of any foreign, federal, state, or local revenue law, pension law, the Employee Retirement Income Security Act, the Consolidated Omnibus Budget Reconciliation Act ("**COBRA**"), the WARN Act (29 U.S.C. §§ 2101 et seq.)

("**WARN**"), the Comprehensive Environmental Response Compensation and Liability Act ("**CERCLA**"), the Fair Labor Standard Act, Title VII of the Civil Rights Act of 1964 (as amended), the Age Discrimination and Employment Act of 1967 (as amended), the Federal Rehabilitation Act of 1973 (as amended), the National Labor Relations Act, 29 U.S.C. § 151, *et seq.* (the "**NLRA**"); or (iv) be liable for any environmental liabilities, debts, claims, or obligations arising from conditions first existing on or prior to Closing (including, without limitation, the presence of hazardous, toxic, polluting, or contaminating substances or wastes), which may be asserted on any basis, including, without limitation, under CERCLA, any liabilities, debts, or obligations of or required to be paid by the Debtors for any taxes of any kind for any period, labor, employment, or other law, rule or regulation (including, without limitation, filing requirements under any such laws, rules, or regulations), any escheat liabilities arising prior to the Closing, or under any products liability or consumer protection law or doctrine with respect to the Debtors' liability under such law, rule, or regulation or doctrine.

15.     Other than as expressly set forth in the Purchase Agreement solely with respect to Assumed Liabilities and Permitted Liens, if any, neither the Purchaser, nor any Affiliate, successor, or assignee of the Purchaser shall have any responsibility for (i) any liability or other obligation of the Debtors or related to the Purchased Assets or (ii) any Liens or Claims against the Debtors, any of their predecessors or Affiliates, or the Purchased Assets.  Other than as expressly set forth in the Purchase Agreement solely with respect to Assumed Liabilities and Permitted Liens, if any, neither the Purchaser, nor any Affiliate, successor, or assignee of the Purchaser, shall have any liability whatsoever with respect to the Debtors' (or their predecessors' or Affiliates') businesses or operations or any of the Debtors' (or their predecessors' or Affiliates') obligations based, in whole or part, directly or indirectly, on any theory of successor or vicarious liability of

any kind or character, or based upon any theory of antitrust, environmental, successor or transferee liability, *de facto* merger or substantial continuity, labor and employment or products liability, whether known or unknown as of the Closing, now existing or hereafter arising, asserted or unasserted, fixed or contingent, liquidated or unliquidated, including, without limitation, (i) liabilities on account of any taxes arising, accruing or payable under, out of, in connection with, or in any way relating to the ownership or operation of the Purchased Assets prior to the Closing; (ii) liabilities or obligations under WARN; (iii) escheat liabilities arising prior to Closing; or (iv) liabilities or obligations under CERCLA, or any foreign, federal, state, or local labor, employment, or environmental law whether of similar import or otherwise by virtue of the Purchaser's purchase of the Purchased Assets or assumption of the Assumed Liabilities by the Purchaser or an Affiliate of the Purchaser (all liabilities described in paragraph 14 and paragraph 15 of this Order, "**Successor or Transferee Liability**").

16.     Effective upon the Closing, except with respect to Assumed Liabilities and Permitted Liens, if any, all persons and entities are forever prohibited from commencing or continuing in any matter any action or other proceeding, whether in law or equity, in any judicial, administrative, arbitral, or other proceeding against the Purchaser, any Affiliates of Purchaser or any their respective officers, directors, representatives, controlling persons, members, employees, agents, representatives, shareholders, partners, successors and assigns or any of their respective assets (including the Purchased Assets), with respect to any (i) Lien or Claim or (ii) Successor or Transferee Liability, including, without limitation, the following actions with respect to clauses (i) and (ii): (a) commencing or continuing any action or other proceeding pending or threatened; (b) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, or order; (c) creating, perfecting, or enforcing any Lien or Claim; (d) asserting any setoff (except with

respect to setoffs that were effected prior to the Petition Date), right of subrogation, or recoupment of any kind; (e) commencing or continuing any action, in any manner or place, that does not comply with, or is inconsistent with, the provisions of this Order or other orders of this Court, or the agreements or actions contemplated or taken in respect hereof; or (f) revoking, terminating, or failing or refusing to renew any license, permit, or authorization to operate any of the Purchased Assets or conduct any of the businesses operated with such Purchased Assets.

17.     This Order shall be effective as a determination that, as of Closing, all Liens and Claims (other than Permitted Liens and Assumed Liabilities) have been unconditionally released, discharged, and terminated as to the Purchaser and Purchased Assets.

## Good Faith of the Purchaser

18.     The Purchaser is a good faith purchaser within the meaning of section 363(m) of the Bankruptcy Code and, as such, is entitled to the full protections of section 363(m) of the Bankruptcy Code. The Transaction contemplated by the Purchase Agreement is undertaken by the Purchaser without collusion and in good faith, as that term is defined in section 363(m) of the Bankruptcy Code.

19.     Neither the Debtors, the Purchaser nor any Affiliate of either the Debtors or the Purchaser have engaged in any collusion with other bidders or other parties or have taken any other action or inaction that would cause or permit the Transaction to be avoided or costs or damages to be imposed under section 363(n) of the Bankruptcy Code or otherwise. The consideration provided by the Purchaser for the Purchased Assets under the Purchase Agreement is fair and reasonable and is not less than the value of such Purchased Assets, and the Transaction may not be avoided under section 363(n) of the Bankruptcy Code.

20.    The Purchaser is not an "insider" of any of the Debtors as that term is defined in section 101(31) of the Bankruptcy Code.

**Assumption and Assignment of Assumed Contracts**

21.    To the extent that any entity did not timely file a Contract Objection by the Contract Objection Deadline with respect to any Assumed Contract set forth on the Cure Notice, such entity shall forever be barred and estopped from objecting: (i) to the Cure Amounts as the amount to cure all defaults to satisfy section 365 of the Bankruptcy Code and from asserting that any additional amounts are due or defaults exist; (ii) that any conditions to assumption and assignment must be satisfied under such Contract or Lease before it can be assumed and assigned or that any required consent to assignment has not been given; or (iii) that the Purchaser has not provided adequate assurance of future performance as contemplated by section 365 of the Bankruptcy Code.

22.    The assumption and assignment of the Assumed Contracts is approved, including, for the avoidance of doubt, the timing set forth in the Purchase Agreement.  The Debtors are authorized to assume and assign each of the Assumed Contracts to the Purchaser or an Affiliate of the Purchaser upon the Closing of the Transaction (or thereafter, in accordance with the Purchase Agreement and this Order), free and clear of all Liens and Claims, other than Assumed Liabilities and Permitted Liens, if any.  The payment of the applicable Cure Amounts, if any, by the Purchaser, in accordance with the Purchase Agreement shall, in accordance with section 365(b) of the Bankruptcy Code, (i) cure all defaults under the Assumed Contracts as contemplated by section 365 of the Bankruptcy Code as of the Closing Date, (ii) compensate for any actual pecuniary loss to such non-Debtor counterparty resulting from such default, and (iii) together with the assumption of the Assumed Contracts by the Debtors and the assignment of the Assumed Contracts to the Purchaser or an Affiliate of the Purchaser, constitute adequate assurance of future performance

thereof.    The Cure Amounts, if any, and any payments made to the counterparties under the Assumed Contracts prior to the assumption of the Assumed Contracts shall be deemed payments that were required to be made in full as part of the obligation to assume and assign the Assigned Contracts under this Sale Order and the Purchase Agreement.

23.    Pursuant to section 365(f) of the Bankruptcy Code, subject to the payment of the applicable Cure Amounts by the Purchaser, if any, the Assumed Contracts to be assumed and assigned under the Purchase Agreement shall be assigned and transferred to, and remain in full force and effect for the benefit of, the Purchaser notwithstanding any provision in the contracts or other restrictions, whether under applicable non-bankruptcy law or otherwise, prohibiting or conditioning their assignment or transfer.    Any provisions in any Assumed Contract that prohibit or condition the assignment of such Assumed Contract or allow the counterparty to such Assumed Contract to terminate, recapture, impose any penalty or fee or other financial accommodation to the non-debtor counterparty, accelerate, increase any rate, condition on renewal or extension, or modify any term or condition upon the assignment of such Assumed Contract, constitute unenforceable anti-assignment provisions that are void and of no force and effect.    Subject to the payment of the applicable Cure Amounts, if any, by the Purchaser, all other requirements and conditions under sections 363 and 365 of the Bankruptcy Code for the assumption by the Debtors and assignment to the Purchaser or an Affiliate of the Purchaser of the Assumed Contracts have been satisfied.

24.    Upon taking assignment of the Assumed Contracts and the payment of the relevant Cure Amounts, if any, the Purchaser shall be deemed to be substituted for the Debtors as a party to the applicable Assumed Contracts and the Debtors shall be released, pursuant to section 365(k) of the Bankruptcy Code, from any liability under the Assumed Contracts.    There shall be no

30148527.11

32298167.2

assignment fees, increases, or any other fees charged to the Purchaser or the Debtors as a result of the assumption and assignment of the Assumed Contracts.  The failure of the Debtors or the Purchaser to enforce at any time one or more terms or conditions of any Assumed Contract shall not be a waiver of such terms or conditions or of the right of the Debtors or the Purchaser, as the case may be, to enforce every term and condition of such Assumed Contract.  The validity of the assumption and assignment of any Assumed Contract to the Purchaser shall not be affected by any existing dispute between the Debtors and any counterparty to such Assumed Contract.

25.     The assignments of each of the Assumed Contracts are made in good faith under sections 363(b) and (m) of the Bankruptcy Code and shall be free and clear of any and all Liens and Claims pursuant to section 363(f) of the Bankruptcy Code.

26.     Within five days following (i) the closing of the transactions contemplated under the Purchase Agreement, or (ii) the Contract Designation Period, as applicable, the Debtors shall file a notice identifying the Assumed Contracts that were assumed and assigned to Purchaser and shall serve the same on all counterparties to the Assumed Contracts.

## Other Provisions

27.     The Debtors, including their professionals and advisors, and Purchaser shall cooperate in good faith subsequent to the closing of the transactions contemplated under the Purchase Agreement to (i) effectuate the sale and transfer of the Purchased Assets, including without limitation the assignment of the Assumed Contracts, (ii) undertake accounting, tax, employee and human resource matters attendant to the sale and the Debtors' winding up their affairs and closing their estates, and (iii) address certain payables associated with the Assumed Liabilities and Assumed Contracts that may need to be paid at or shortly after Closing but where Purchaser is not yet able to make such payments directly to the corresponding counterparties.

28.     As set forth on the record at the Sale Hearing, the Committee Objection has been resolved pursuant to the following settlement (the "**Settlement**"), which is hereby approved and effective as of the entry of this Order and shall be incorporated in the *Combined Disclosure Statement and Joint Chapter 11 Plan of Plastiq Inc. and its Affiliated Debtors* (the "**Plan**"):

    a)    If, as, and when Colonnade Acquisition Corp. II ("**Colonnade**") receives from Priority the initial payment of $1,000,000 at Closing in accordance with the terms of the Letter Agreement, Colonnade shall promptly make a cash payment to the Debtors' estates in the amount of 30% of such cash payment actually received from Priority, for distribution in accordance with the Final DIP Order and the Plan. Colonnade shall be granted an allowed claim in the amount of $9,000,000, which claim shall be classified as a general unsecured claim to share ratably with other holders of allowed unsecured claims under the Plan.

    b)    Except as otherwise provided in this paragraph 28, Colonnade fully and forever releases and discharges the Debtors, including their affiliates, subsidiaries, officers, directors, shareholders, agents, attorneys, advisors, and employees, past and present (collectively, the "**Estate Released Parties**"), from any and all claims, demands, liens, agreements, contracts, covenants, suits, actions, causes of action, obligations, controversies, debts, costs, expenses, damages, judgements, orders and liabilities, of any kind and of every nature whatsoever, direct or indirect, whether known or unknown, or whether asserted or unasserted, which Colonnade now has against the Purchased Assets or the Estate Released Parties.

c)      Each of the Debtors, their bankruptcy estates, and the Committee fully and forever release and discharge Colonnade, including its respective affiliates, subsidiaries, officers, directors, shareholders, agents, attorneys, advisors, and employees, past and present (collectively, the "**Colonnade Released Parties**"), from any and all claims, demands, liens, agreements, contracts, covenants, suits, actions, causes of action, obligations, controversies, debts, costs, expenses, damages, judgements, orders and liabilities, of any kind and of every nature whatsoever, direct or indirect, whether known or unknown, or whether asserted or unasserted, which the Debtors or their estates now have against the Colonnade Released Parties.

d)      For the avoidance of doubt, except as expressly set forth in this paragraph 28, nothing in this paragraph 28 shall alter, modify or affect any other term or provision of the Letter Agreement, including (i) the rights and interests provided therein and (ii) the releases provided by Colonnade in favor of the Buyer Parties (as defined in the Letter Agreement).

29.     The terms and provisions of the Purchase Agreement, including any ancillary or related documents, and this Order shall be binding in all respects upon the Debtors, the Debtors' estates, their creditors, any affected third parties, all holders of equity interests in the Debtors, all holders of any claims, whether known or unknown, against the Debtors, any holders of Liens against or on all or any portion of the Purchased Assets, including, but not limited to all contract counterparties, leaseholders, governmental units, and any trustees, examiners, administrators, responsible officers, estate representatives, or similar entities for the Debtors, if any, subsequently appointed in any of the Debtors' Chapter 11 Cases or upon a conversion of any of the Debtors'

Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code, and each of their respective Affiliates, successors and assigns. The Purchase Agreement and this Order shall inure to the benefit of the Debtors, the Debtors' estates, creditors, the Purchaser, and their respective successors or assigns. The Purchase Agreement, the Transaction and this Order shall not be subject to rejection or avoidance by the Debtors, the Debtors' estates,  creditors, its equity interest holders, or any trustee, examiner or receiver.

30.    The Purchase Agreement and any related agreements, documents, or other instruments may be modified, amended, or supplemented by the parties thereto and in accordance with the terms thereof, without further order of the Court, provided that any such modification, amendment, or supplement does not have a material adverse effect on the Debtors' estates.

31.    The Court shall retain exclusive jurisdiction to, among other things, interpret, implement, and enforce the terms and provisions of this Order and the Purchase Agreement, all amendments thereto, and any waivers and consents thereunder and each of the agreements executed in connection therewith to which the Debtors are a party and to adjudicate, if necessary, any and all disputes concerning or relating in any way to the Transaction or this Order.  This Court retains jurisdiction to compel delivery of the Purchased Assets, to protect the Purchaser (and its assets, including the Purchased Assets) and its Affiliates, designees, assignees, or successors (or their assets), against any and all Liens and Claims and Successor and Transferee Liability and to enter orders, as appropriate, pursuant to sections 105, 363, or 365 of the Bankruptcy Code (or other applicable provisions) necessary to transfer the Purchased Assets and the Assumed Contracts to the Purchaser.

32.    The requirements set forth in Bankruptcy Rules 6003(b), 6004, and 6006 have been satisfied or are otherwise hereby waived.

30148527.11

32298167.2

33.     As provided by Bankruptcy Rules 7062 and 9014, the terms and conditions of this Order shall be effective immediately upon entry and shall not be subject to the stay provisions contained in Bankruptcy Rules 6004(h) and 6006(d).  Time is of the essence in closing the sale and the Debtors and the Purchaser intend to close the sale on or before July 31, 2023.

34.     No bulk sales law, bulk transfer law or similar law of any state or other jurisdiction (including those relating to Taxes, other than Transfer Taxes) shall apply in any way to the transactions contemplated by the Purchase Agreement, the Motion or this Order. Except as otherwise expressly provided in the Purchase Agreement, all obligations of the Debtors relating to Taxes, whether arising under any law, by the Purchase Agreement, or otherwise shall be the obligation of and fulfilled and paid by the Debtors. For the avoidance of doubt, and notwithstanding any other provision in this Order, nothing in this Order or the  Purchase Agreement shall create a tax exemption under Section 1146(a) of the Bankruptcy Code.

35.     All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).In the event that there is a direct conflict between the terms of this Order, the Purchase Agreement, and any documents executed in connection therewith, the provisions contained in this Order, the Purchase Agreement and any documents executed in connection therewith shall govern, in that order. Nothing contained in any chapter 11 plan hereinafter confirmed in any of these Chapter 11 Cases, any order confirming such plan(s), or in any other order of any type or kind entered in any of these Chapter 11 Cases (including, without limitation, any order entered after any conversion of any of these Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code) or in any related proceeding shall alter, conflict with or derogate from

the provisions of the Purchase Agreement, any documents executed in connection therewith, or the terms of this Order.

Dated: July 31st, 2023
Wilmington, Delaware

BRENDAN L. SHANNON
UNITED STATES BANKRUPTCY JUDGE